PAPPAS v. GREAT NORTHERN RY. CO.

(District Court, W. D. Washington, N. D.   July 19, 1912.)

No. 1,906.

1. RAILROADS (§ 350*)—STREET CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

In an action against a railroad company for personal injury to a driver at a street crossing, where he was struck by a train, whether he was guilty of contributory negligence held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. NEW TRIAL (§ 59*)—SPECIAL INTERROGATORIES—DISAGREEMENT AS TO ANSWER.

Where, in an action against a railroad company for injuries received in a street crossing accident, special interrogatories were submitted to

the jury as to whether the train which struck plaintiff was running faster than 12 miles an hour, and whether the engine was in plain view and hearing at the time and place when and where plaintiff stopped to look and listen, a general verdict for plaintiff is not so inconsistent with the jury's disagreement on an answer to the second question as to entitle defendant to a new trial, where the first question was answered affirmatively, and where it appeared that not more than six seconds elapsed between the time the train could have been seen by plaintiff and the collision, and that any error of judgment in his action was excusable as being in extremis.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 125; Dec. Dig. § 59.*]

Action by Christ Pappas against the Great Northern Railway Company. Verdict for plaintiff, and defendant moves for judgment notwithstanding the verdict and petitions for new trial. Motion overruled, and petition denied.

Carkeek, McDonald & Kapp and Walter B. Allen, all of Seattle, Washington, for plaintiff.

F. V. Brown and Frederic G. Dorety, both of Seattle, Washington, for defendant.

HANFORD, District Judge. [1] This action is to recover damages for an injury suffered by the plaintiff when he was driving a one-horse bread wagon across the main track of the Great Northern Railroad at its intersection of Pacific avenue, in the city of Everett. The time of the accident was about 6 p. m., March 28, 1910. Pacific avenue is crossed by two other tracks of the Great Northern Railroad, both of which are west of the main line track, the distance between the main line and the nearest of the two others being 27 feet from center to center. It is a wide avenue, and in the middle of it there was a plank roadway running longitudinally. The Great Northern Railroad Company's right of way north of Pacific avenue had in it two side tracks on which there were several box cars, and a covered platform, which to some extent obstructed the view of the main line track in that direction from any viewpoint in Pacific avenue west of the track referred to as being 27 feet from the main line track. The plaintiff was driving his horse at a walk eastwardly, so that he had to cross all of the three tracks in Pacific avenue. A Great Northern Railroad train coming from the north struck his wagon, and caused the injury complained of.

On the second trial of the case the jury rendered a verdict awarding to the plaintiff $3,515 damages, against which the defendant has interposed a motion for a judgment non obstante veredicto and a petition for a new trial, if said motion shall be denied. The ground upon which the motion is based is alleged contributory negligence on the part of the plaintiff, and it is claimed that the indisputable evidence and his own admissions proves that he did not stop, look, and listen when he should have done so, or else he must have driven upon the main line track recklessly in the face of known danger.

The plaintiff testified that, when he was upon the second track

where he could see beyond the box cars, he did stop, look, and listen, and that he did not see or hear any approaching train, and, believing that it was safe to cross the main line track, he continued on his way, and did not notice the approach of the train that struck him until his horse had stepped upon that track. This is not contradicted. There is no apparent reason for believing that the statement is not true, and I believe that it is true. In the position where the plaintiff did stop, look, and listen for signs of danger, the distance from his horse's head to the west rail of the main line track was 20 feet, going in a walk at the rate of 4 miles per hour, to start and travel 20 feet would consume four seconds, and if the plaintiff had seen the approaching train at that instant, and if he had not been dazed, nor bewildered, and had quickly used his whip to hasten, he might have crossed the track and a sufficient distance beyond for clearance in two more seconds. According to his testimony, that is what he tried to do, but the train overtook him, striking the hind part of the wagon. If he had used better judgment, and if his horse had been quick to obey, he might have stopped, and backed sufficiently for clearance in one or two seconds. Extreme vigilance, promptness, and skill might have averted the accident, for, when the on-coming train had reached a point where it could have been seen by the plaintiff, the front end of the locomotive was distant from his position 283 feet. Its speed, according to the best estimate of the most reliable of the different witnesses was 32 miles per hour, and at that rate it required six seconds to travel 282 feet, leaving four seconds of time as a margin of safety in which the plaintiff might have crossed over the track, and reached a point of safety, or have avoided danger by backing away, instead of crossing ahead of the train. In this way by arithmetic it can be demonstrated that there was a possibility for the plaintiff to have escaped. The arithmetic, however, leaves still a question to be decided, and that is whether the plaintiff was guilty of negligence by reason of having squandered four seconds of time after he was or should have been conscious of being in peril. That is a question proper for the jury to decide, and the court would not be justified in holding the verdict to be erroneous.

Motion denied.

The petition for a new trial is based mainly upon exceptions taken to the instructions given by the court to the jury and to the refusal of the court to give instructions requested in behalf of the defendant. My opinion as to the controverted questions of law has not been changed, and I do not believe that the exceptions taken point to any substantial error.

[2] In submitting the case to the jury, the court gave an instruction to render a general verdict for the plaintiff, or the defendant and submitted two forms, and, complying with a request of the defendant's attorney, also submitted to the jury the following questions to be answered in the nature of a special verdict:

"(1) Was the train at the time of the accident or just prior thereto traveling at a rate of speed exceeding 10 miles per hour?

"(2) Do you believe that the engine which struck the plaintiff was in plain

view and hearing at the time and from the place where the plaintiff has testified that he stopped to look and listen?"

Several hours after the jury had retired and some time near 11 p. m., the judge instructed the jury that, when they reached an agreement, their verdict should be signed by the foreman and left in his custody in a sealed envelope, and that they might then separate until the hour of convening court the next day when they should appear to render the verdict to the court, and at that time the jury made inquiry if they were obliged to come to an agreement as to the answer to be returned to each of said questions, and were informed by the judge that if they were unable to agree with respect to said questions, but should agree unanimously upon a general verdict, the court would receive it, and not insist upon an agreement as to the questions. The jury rendered an affirmative answer to the first of said questions, and to the second they answered, "Jury disagrees."

It is now contended that the effect of discharging the jury upon their return to the second question saying: "Jury disagrees" was to make a mistrial. The court might have to sustain this contention if the case necessarily hinged upon the decision of that question, or, in other words, if an affirmative answer would be inconsistent with the general verdict. I so believe, for the reason that the Code of the state of Washington, which controls the procedure of this court in actions at law, provides that:

"When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." Pierce's Code 1905, § 637.

The arithmetical calculations above set forth lead me to the conclusion that not more than six seconds of time elapsed after the train could have been seen by the plaintiff and before the collision; and any error on the part of the plaintiff in so short a space of time might, in the exercise of sound judgment by the jury, have been attributed to surprise and shock caused by the extraordinary velocity of the train in approaching a public street of a city. An error in extremis by an injured party is not necessarily such a fault as will exonerate from liability the perpetrator of a grievous wrong by which the injury was inflicted.

I consider that the case has been fairly tried, and that the verdict of the jury is right according to law and justice, and that it is not probable that on another trial the defendant would secure a more favorable verdict. Therefore the petition for a new trial will also be denied.